Garry, J.R
(dissenting). We respectfully dissent. At the outset, it bears noting that defendant was ultimately detained by the state troopers for roughly one half hour before the canine officer was requested. We fully agree with the majority that the initial traffic stop was valid, and that the trooper was permitted to contact defendant’s parole officer and ask defendant for this contact information. We dissent because defendant’s parole status and his response to the request for his parole officer’s phone number did not give rise to a founded suspicion of criminality, and there was no adequate basis stated in the troopers’ testimony to justify the further interrogation, *1363 delay at the roadside or the canine sniff, all of which occurred after the initial justification for the stop had expired (see People v Garcia, 20 NY3d 317, 322 [2012]; People v Devone, 15 NY3d 106, 110 [2010]; People v Dunbar, 5 NY3d 834, 835 [2005]; People v Hollman, 79 NY2d 181, 191 [1992]; see generally People v De Bour, 40 NY2d 210, 223 [1976]).
Although the majority places significant weight on defendant’s parole status, the suspected technical violation of defendant’s parole, without more, did not indicate criminal activity (see 9 NYCRR 362.5; People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76, 80 [1979]; People ex rel. Maggio v Casscles, 28 NY2d 415, 418 [1971]; compare People v Simmons, 79 AD3d 431, 432 [2010], lv denied 16 NY3d 836 [2011]). Notably, the police computer system did not indicate any warrant of parole violation issued against defendant, and in fact displayed a warning not to “search or detain or arrest based solely on this [parole status] information.” State Trooper David Jimenez acknowledged during his testimony that a determination of whether an individual is in violation of his or her parole is properly based upon information obtained from the parole officer, which was absent here.
We further disagree that defendant’s response to the trooper’s request for his parole officer’s phone number gave rise to a founded suspicion. Defendant told the troopers that he could not access his parole officer’s phone number because his phone would not “turn on” — and the majority notes that he was thereafter able to turn on his phone. However, Jimenez testified that, although the phone did turn on, half of the screen was black and was likely not operable. Immediately thereafter, defendant explained that he went to the shopping outlet to fix his phone, in slight contrast to his original statement during the initial stop that he went there to shop. Even taken together with his nervousness, the minimal inconsistency in these statements did not justify defendant’s prolonged detention, particularly because the statements were made only after the initial justification for the stop had been exhausted (see People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 US 868 [1995]; People v Milaski, 62 NY2d 147, 156 [1984]; People v May, 52 AD3d 147, 152 [2008]). Defendant’s subsequent statements regarding his plans to fix his broken phone, made during his continuing detention and interrogation, were clearly beyond the scope authorized by the circumstances of the initial stop (see United States v Sharpe, 470 US 675, 682 [1985]; People v Banks, 85 NY2d at 562; People v May, 52 AD3d at 151). As the troopers’ testimony failed to demonstrate a founded suspicion *1364 of criminality once the initial justification for the stop had dissipated, they were not allowed to continue questioning defendant, and these answers — offered during what had become an illegal seizure — may not now be properly used to support the allegations (see People v Banks, 85 NY2d at 562; People v Sobotker, 43 NY2d 559, 565 [1978]; see also People v Freeman, 144 AD3d 1650, 1651 [2016]; People v Young, 258 AD2d 604, 604 [1999], lv denied 93 NY2d 903 [1999]). Accordingly, we would reverse County Court’s order denying defendant’s suppression motion.
Clark, J., concurs.
Ordered that the judgment is affirmed.